**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

GARLAND JAMES GREEN                                    PETITIONER
ADC #149195

V.                          NO. 5:14cv00313-BSM-JTR

WENDY KELLEY, Director,                                 RESPONDENT
Arkansas Department of Correction

## <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

## <u>INSTRUCTIONS</u>

The following Proposed Findings and Recommended Disposition ("Recommendation") have been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Background

Pending before the Court is a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus filed by Petitioner, Garland James Green ("Green"), an inmate in the Arkansas Department of Correction ("ADC"). Before addressing Green's habeas claims, the Court will review the procedural history of the case in state court.

On October 11, 2010, *in a bench trial*, Green was convicted of attempted capital murder, first degree battery, and being a felon in possession of a firearm in Pulaski County Circuit Court. Following a sentencing hearing on November 15, 2010, Green received a total of 120 months of imprisonment. *Trial R. at 48-51, 72-271, 282-663.*[1]

Green appealed his convictions to the Arkansas Court of Appeals, where he argued that: (1) the trial court erred in not acquitting him of attempted murder and battery, because the shooting was in self defense; and (2) the trial court erred in rejecting his "choice of evils" defense[2] to the charge of being a felon in possession of a firearm. The Arkansas Court of Appeals, in affirming all three of his convictions, summarized the trial testimony as follows:

> [On July 12, 2008,] Rufus Brian Worsham went to the [Royal Motorcycle Club] located near Woodrow Street around 10:00 p.m. intending to see Dennis Barton, his uncle by marriage. Worsham was familiar with appellant Green, also known as "Loco," who was at the club that night. Worsham brought marijuana with him and made a foul remark about a woman there, stating, "I ain't letting no crack head roll my weed." Green struck Worsham, and a brawl ensued. Tables and chairs were overturned.
>
> Ricky Howard testified that he was present at the motorcycle club that night, and he saw Barton and Worsham inside. Howard said Barton

---

[1]The four-volume record of Green's trial proceedings was submitted as Resp't Ex. 2 (*Doc. 8*) and Resp't Ex. 3 (*Doc. 10*). The two-volume record of his Rule 37 post-conviction proceedings was submitted as part of Resp't Ex. 2.

[2]Under this defense, conduct is justifiable if the defendant's action is "necessary as an emergency measure to avoid an imminent public or private injury." Ark. Code Ann. § 5-2-604(a)(1) (Repl. 2006).

had a knife in his waistband and Worsham had a gun in his waistband. Howard saw Green strike Worsham in the face, leading to their fight. Howard said Green ended up with the gun.

Worsham ran out of the building to his truck parked out front, but the truck doors were locked so he could not get inside. Looking back toward the building's door, Worsham saw that Green had a gun, now pointed at Worsham, which he began firing. Howard corroborated Worsham's account about running out, being locked out of his truck, and Green shooting at Worsham.

Janice Frye testified that she was in the club that night, spoke to Worsham, and saw a gun in Worsham's waistband area. She observed Green and Worsham arguing and then physically fighting inside the building. She also observed Worsham go outside to his truck afterward, followed by Green, who stood at the front door yelling at Worsham to leave on foot. Frye believed that Worsham moved toward Green in a threatening manner, resulting in Green repeatedly firing the gun.

*Worsham ran to get away, but he was struck in the arm.* Green shot Worsham's truck windshield several times. Worsham attempted to hide, but Green drove around the neighborhood and found him. Green yelled at Worsham and shot from the driver's window, striking Worsham several more times in the torso. Worsham denied ever threatening Green's life that night.

Detective Martin of the Little Rock Police responded to the disturbance call, finding Worsham's GMC truck parked in front of the establishment with six bullet strikes to the windshield. Officer Woodall confirmed that Worsham had five bullet injuries: two gunshot wounds in his upper-right chest, one in his lower-left stomach, and two in his right arm. A crime scene specialist verified that Worsham's locked GMC truck sat right outside the establishment. She found five nine-millimeter casings around the truck's exterior. No gun was found inside the truck. *The crime-scene specialist also stated that she saw what appeared to be blood on the ground about 100 yards away from the establishment.*

Green testified in his own defense. He said that he told Worsham

3

to take his marijuana outside, which led to the verbal argument. He agreed that he hit Worsham in the face and that they fought. Green said he took Worsham's gun when it hit the floor, following Worsham outside and telling Worsham to get away from his truck. He said Worsham's uncle, whom Green had known for about ten years, stood nearby the door. Green said he saw that the uncle had a knife. *Green said he thought Worsham might try to retrieve another gun, although the truck was obviously locked. Green said that Worsham "rushed" at him threatening to kill him, so he began firing the gun at Worsham. He testified that Worsham ran away, "like he was running track." Green agreed that he was angry, which was why he "spent the gun on [Worsham] and the truck." He denied chasing Worsham down to shoot him more times.*

*Green v. State*, 2011 Ark. App. 700, at 3-7 (*Green I*) (emphasis added).

On December 28, 2011, Green filed a *pro se* Rule 37 petition for post-conviction relief. *Rule 37 R. at 14-22; see* Ark. R. Crim. P. 37. In his petition, he argued: (1) his trial counsel was ineffective; (2) he was denied a speedy trial; (3) he was denied a fair trial; and (4) prosecutorial misconduct occurred during his trial.

On August 13, 2012, the trial court held an evidentiary hearing on Green's Rule 37 claims. *Rule 37 R. at 71-177.* Both Green and his trial attorney testified.

On August 20, 2012, the trial court entered an order denying Green's Rule 37 petition. *Id. at 43-45.* Green appealed. *Id. at 46; Doc. 2 at 72-93; Doc. 6-1.*

On June 19, 2014, the Arkansas Supreme Court affirmed the trial court's denial of Rule 37 relief. *Green v. State*, 2014 Ark. 284 (*Green II*). In doing so, the Court analyzed all of Green's ineffective assistance of counsel claims under the proper legal

standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

On August 18, 2014, Green filed this § 2254 habeas action. *Doc. 2*. In his Petition, he argues:

> (1)    His trial attorney was ineffective for: (a) failing to interview and secure the testimony of all witnesses requested by Green; (b) failing to obtain an expert witness in bullet trajectory; (c) failing to interview and subpoena Officer Kohler; (d) failing to request a continuance when, due to illness, a witness was unable to travel from New York for trial; (e) failing to prepare Green to testify; (f) failing to interview and subpoena Dennis Barton; and (g) failing to investigate a more favorable defense;

> (2)    He was denied his right to a speedy trial, and his attorney failed to object;

> (3)    He was denied a fair trial because a police detective made false and misleading statements in an affidavit to obtain a warrant for his arrest, and his attorney failed to object; and

> (4)    Prosecutorial misconduct occurred because: (i) a police detective falsified statements in the affidavit used to obtain the warrant for his arrest; (ii) the prosecuting attorney "belatedly" amended the charges against Green; (iii) the prosecutor did not inform the court of a "deal for leniency" [for the victim who was scheduled for trial on pending charges] in exchange for the victim's testimony; and (iv) the prosecutor knowingly allowed the victim to commit perjury.

Respondent contends that all of Green's claims are either procedurally defaulted or fail on the merits. *Doc. 6*.

For the reasons explained below, the Court recommends that each of Green's habeas claims be dismissed with prejudice, because they are either without merit or he has procedurally defaulted the claim.

## II. Discussion

**A.    ANALYSIS OF GREEN'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**[3]

In *Strickland v. Washington*, the United States Supreme Court articulated the two-part test for determining if a criminal defendant's counsel has been constitutionally ineffective: first, the attorney's conduct must fall below "an objective standard of reasonableness"; *and*, second, the attorney's deficient performance must prejudice the defendant's defense. *Strickland*, 466 U.S. at 687-88. The defendant is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a prisoner fails "to establish either *Strickland* prong [it] is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

Once a state court has made a final adjudication of a habeas petitioner's ineffective-assistance claims under the *Strickland* test, as the Arkansas Supreme Court

---

[3]Green properly exhausted most of his ineffective-assistance claims in state court. While he appears to have procedurally defaulted some of those claims, by failing to specifically raise or develop them in his state post-conviction proceedings, it is in the interest of judicial efficiency for the Court to proceed to the merits of *all* of Green's ineffective-assistance claims, rather than determine whether his lack of counsel, during his Rule 37 proceeding, satisfies the "cause" prong of the cause-and-prejudice exception to procedural default under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), and *Sasser v. Hobbs*, 735 F.3d 833 (8th Cir. 2013). *See Trussell v. Bowersox*, 447 F.3d 588, 590-91 (8th Cir. 2006) (because procedural default is not a jurisdictional bar to federal habeas review, it can be bypassed "in the interest of judicial economy"); *Clemons v. Kelley*, 2015 WL 4610355, *3 (E.D. Ark. July 31, 2015) (recognizing the judicial efficiency of addressing all claims on the merits where procedural default issues are "tangled" with most of the ineffective assistance of counsel claims, and *Martinez* could "open the door" for merits-consideration).

did in *Green II*, the only "pivotal question" that remains for the federal habeas court is whether the application of the *Strickland* standard was unreasonable," *i.e.*, was the state court's decision "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 101-03 (2011). Meeting this very high bar is always a daunting task for a habeas litigant.[4]

### 1. Counsel's Ineffectiveness Arising From His Alleged Failure to Interview, Subpoena, Secure Testimony From, or Adequately Question Certain Witnesses[5]

Green alleges that his trial attorney rendered ineffective assistance of counsel in the way he dealt with nine witnesses, who either did testify or allegedly should have been called to testify on Green's behalf: (a) Kevin Christopher; (b) Ricky Howard; (c) Kenneth Green; (d) Patricia Louis Shay; (e) Officer Kohler; (f) Dennis Barton; (g)

---

[4]Where a state court has previously adjudicated a claim on the merits, a federal habeas court may grant habeas relief for the same claim in only three limited situations: where the state court adjudication (1) was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "involved an unreasonable application" of clearly established federal law, *id.*; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

  For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland*'s high bar [for evaluating ineffective-assistance claims] is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 105 (citations omitted). The standards created by *Strickland* and § 2254(d) "are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.*

[5]*See* Claims 1(a), (b), (c), (d) and (f) asserted in Green's § 2254 Petition.

Keith Farr and Kenneth Farr; and (h) an expert witness in bullet trajectory. *Doc. 2 at 3-4, 6-9 (referring to Rule 37 R. at 75-77, 82-84); Doc. 9 at 4-9.* Because Green alleges that his trial attorney's decisions, with regard to each of these witnesses, constituted separate instances of ineffective assistance of counsel, the Court must analyze those decisions as they relate to each specific witness.

### a.     Kevin Christopher

According to Green, Christopher was present at trial and was willing to testify as a defense witness. *Doc. 2 at 6; Doc. 9 at 4.* Green does not provide an affidavit from Christopher or describe what exculpatory testimony he would have given if he had been called to testify.

In his Rule 37 proceeding, Green testified that Christopher was an "alibi" witness who would have offered the following testimony: (1) Christopher had a mechanic shop across the street from the Royal Motorcycle Club, the scene of the crime; and (2) a few days *before* Green's involvement in the shooting, Christopher was attacked at his shop by Dennis Barton, the uncle by marriage of the man Green shot. Green argued that counsel could have used Christopher's testimony to support a defense of "duress" or "self-defense." *Rule 37 R. at 17, 75-76; Doc. 2 at 79, 84-85; Doc. 6-1 at 8.* Green's Rule 37 testimony did not explain *how* Barton's alleged attack on Christopher, *a few days before Green shot the victim*, was relevant to his defense

8

that he shot the victim in "self defense."

Green's trial attorney testified that he interviewed Christopher in his office prior to trial. *Rule 37 R. at 104-05*. The trial transcript shows that Christopher attended Green's trial, but did not testify. *Trial R. at 186-87, 255-56*. During the trial, Green testified about the prior incident between Barton and Christopher at Christopher's mechanic shop. *Id. at 218, 236-38*. Green testified that he was not involved in the prior incident, but "just happened to be down there then." *Id. at 237.*[6] After Green completed his trial testimony, his attorney asked to "talk to [Green] about one witness." The trial transcript shows a "brief pause in the proceedings," after which Green's attorney told the court: "We are not going to call Mr. Christopher." *Id. at 255-56.*

In Green's Rule 37 proceeding, both the trial court and the Arkansas Supreme Court rejected Green's contention that his attorney was constitutionally ineffective for failing to call Christopher, or how he handled or failed to call the other witnesses Green complains about.[7]

---

[6]Apparently, Green is trying to suggest that, because he was "in the area" when Barton attacked Christopher, this somehow caused Barton's nephew by marriage – the man Green shot several days later – to attack Green in the Royal Motorcycle Club. Assuming those facts to be true, it in *no way* provides Green with a defense for his subsequent conduct in chasing the unarmed victim into the parking lot of the club and shooting him as he tried to escape.

[7]Neither the trial court nor the Arkansas Supreme Court identified any of these witnesses by name; discussed their anticipated testimony in any detail; or gave specific reasons for rejecting Green's ineffective assistance of counsel arguments with regard to those witnesses.

Both Green and several of his other eyewitnesses gave *direct testimony* supporting his theory of self-defense. Their testimony was far stronger than any tangentially relevant testimony Christopher might have offered about the *unrelated prior incident* between Barton and Christopher.

Based on this direct testimony, Green's trial counsel argued that the state had failed to prove that Green had acted with "a premeditated and deliberate" purpose sufficient to convict him of "attempted capital murder" and "battery" and that Green instead had only "defended himself with a gun ...." *Trial R. at 181-82, 256-57.* Unfortunately for Green, the trial judge, sitting as the finder of fact, rejected this novel theory of "self defense," which at bottom still involved Green shooting an unarmed man as he tried to flee.[8]

---

However, a state court's decision is still entitled to § 2254 deference even if it does not expressly address a specific claim or explain the reasons relief has been denied. *Johnson v. Williams*, 133 S. Ct. 1088, 1091-92, 1094-96 (2013); *Harrington*, 562 U.S. at 98-99. In such a circumstance, a federal habeas court "must determine what arguments or theories ... *could have supported* ... the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 562 U.S. at 102 (emphasis added).

[8]During the trial, Green testified that: (1) inside the club, the victim "blew up" and repeatedly threatened to "blow [Green's] head off"; (2) the victim pulled up his shirt and showed his pistol to Green; (3) Green saw that Barton, the victim's uncle, had a knife; (4) Green and the victim "got to wrestling," during which the gun hit the floor; (5) Green retrieved the gun, *as the victim ran outside*; (6) Green followed him outside "to keep an eye on him" in the event that he was going to get another gun from his truck; and (7) outside, the *unarmed victim* "rushed" Green and continued to repeatedly threaten to kill him. *Trial R. at 220-29, 237-54.* Both Ricky Howard and Janice Frye, who were also eyewitnesses, generally supported Green's testimony. *Id. at 154-62, 167-76, 192-98, 203-09.*

Importantly, however, neither Green, nor any of his other eyewitnesses, disputed the fact that, *after the "tussle" between Green and the victim inside the club*: (1) the unarmed victim fled

On direct appeal to the Arkansas Court of Appeals, Green's counsel presented a similar argument, *i.e.*, Green was "justified in shooting [the victim], negating the necessary mental state required for" attempted capital murder and battery. *Green I*, *supra* at 2. The Court rejected this argument and upheld the trial court's determination that "the State had sufficiently rebutted any claim of justification and had sufficiently established the necessary level of intention for these two crimes." *Id.* at 6.

Thus, the record shows that Green's counsel: (1) interviewed Christopher prior to trial; (2) elicited testimony from Green regarding the incident between Christopher and Barton; (3) consulted with Green about whether to call Christopher to testify, but made a strategic decision not to call him as a witness;[9] and (4) raised self-defense and justification arguments at trial and on direct appeal based on far stronger and more relevant direct testimony from Green and his other eyewitnesses.

Under these circumstances, Green's counsel's decision not to call Christopher

---

to the parking lot and Green pursued him with a gun; and (2) as the unarmed victim tried to get inside his locked truck, Green fired multiple shots at the victim.

Finally, the victim testified that, as he was running away from his truck, at least one of Green's shots struck him in his right arm. *Id. at 80-86, 94-96, 109-11*. The crime scene specialist testified that, approximately 100 yards from the club, she saw what appeared to be blood on the ground. *Id. at 141, 145-46*. Her testimony directly supported the victim's testimony that, as he fled on foot, one of Green's shots struck him in the right arm. *Id. at 85-86, 96, 110-11*.

[9]*See Harrington*, 562 U.S. at 109 ("There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'"); *Forrest v. Steele*, 764 F.3d 848, 858 (8th Cir. 2014) ("Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight."), *cert. denied*, 136 S. Ct. 35 (2015). .

to testify was not objectively unreasonable. In addition, the omission did not prejudice Green's defense because Green has not shown a reasonable probability that, if counsel had called Christopher, the outcome of his trial would have been different. Accordingly, the state courts' rejection of this claim in the Rule 37 proceeding was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record.

### b.    Ricky Howard.

Green raises a general claim that his trial counsel: (1) failed to properly interview Howard before trial; and (2) when the state later called Howard to testify, Green's attorney allegedly failed to adequately elicit testimony from him to challenge the victim's credibility. *Doc. 2 at 6; Doc. 9 at 4.*

In his Rule 37 proceeding, Green testified that his trial counsel should have elicited testimony from Howard: (1) to impeach the victim's "deceptive" testimony that he had been coming to the motorcycle club since he was five years old; (2) to impeach the victim's testimony that he did not threaten to kill Green; and (3) to develop a defense of duress or self-defense. *Rule 37 R. at 17-18, 75-76, 83-84, 86, 88-89; Doc. 2 at 79.*

In contrast, Green's attorney testified that he interviewed Howard, prior to trial; cross-examined him during trial; and believed that, on balance, Howard's trial

testimony was "supportive of our position." *Rule 37 R. at 104-06*.

After carefully reviewing the record, the Court concludes that Green's counsel, in fact, *did everything* that Green now accuses him of *not* doing. For example, in his testimony, on direct, Howard stated that, even though he had been a member of the club for some time, he did *not* know the victim; thus negating the victim's testimony that he had been coming to the club since he was five. *Trial R. at 150, 153, 178-79*. This eliminated the need for Green's counsel to cross-examine Howard about that issue. Green's counsel also elicited testimony from Janice Frye that she had been a member of the club since 2005 and did *not* know the victim. *Id. at 185, 188*. Likewise, Green himself testified that he and several others started the club in 1999 and that he had never met the victim before the night of the shooting. *Id. at 216, 229-32*. Finally, in cross-examining the victim, Green's counsel questioned him about whether he really had been coming to the club since the age of five. *Id. at 108-09*.

In the same vein, Green's counsel offered considerable testimony aimed at rebutting the victim's assertion that Green was the aggressor and to support Green's position that he shot the victim in self-defense. Howard and Frye testified in great detail about the actions of Green, the victim, and Barton inside and outside the club. They all testified that the victim repeatedly threatened to kill Green. *See id. at 167-69, 171-74, 192-93, 197-98, 203-04, 221, 224, 229, 238-41, 250, 253.* Green's counsel

vigorously cross-examined the victim about whether he threatened to kill Green, eliciting an admission from him that he "got defensive" at some point in the confrontation. *Id. at 104-05.*

After considering all of the evidence presented in the Rule 37 proceeding, both the trial court and the Arkansas Supreme Court rejected Green's ineffective assistance of counsel arguments related to the way in which his attorney interviewed and later elicited testimony from Howard. In light of this record, Green has not established that the manner in which his trial counsel interviewed and later cross-examined Howard was objectively unreasonable or that it in any way prejudiced Green's defense. Accordingly, the state courts' rejection of this ineffective assistance of counsel claim, during the Rule 37 proceeding, was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record.

### c.    Kenneth Green

Green argues that his trial counsel was ineffective for: (1) failing to interview and secure the testimony of Green's father, Kenneth Green ("Mr. Green"), who allegedly was an "alibi" witness and could have been used to impeach the state's witnesses; and (2) failing to move for a continuance because Mr. Green, due to an illness, was unable to travel from New York for trial. *Doc. 2 at 6, 8; Doc. 9 at 6-7.*

Green does not provide an affidavit from Mr. Green or describe his "alibi" testimony.[10]

In his Rule 37 proceeding, Green alleged that his father provided him with a "notarized statement" in which he swore that the victim had "made a threat he was going to blow [Green's] head off." *Rule 37 R. at 17-18, 76-77, 82-84, 88-89; Doc. 2 at 79, 84-85.* Importantly, even if the notarized statement contained such a representation and it had been admitted into evidence, it clearly would have been "cumulative evidence," *i.e.*, several other eyewitnesses for Green offered *identical testimony* from the witness stand.

In contrast, Green's trial counsel testified that he: (1) knew Mr. Green could not attend the trial; (2) believed Mr. Green's notarized statement was "clearly inadmissible"; and (3) "didn't think [he] could compel [Mr. Green's] attendance" at his son's trial. *Rule 37 R. at 105.*

The record shows that counsel knew about Mr. Green's unavailability for trial, reviewed his "notarized statement," and made the determination that, as a matter of law, it was inadmissible hearsay. Finally, because Green and several of his other eyewitnesses testified to the *same facts* allegedly contained in Mr. Green's "notarized

---

[10]Green *admitted* that he shot the victim, but claimed it was in self defense. This would seem to rule out the possibility of Mr. Green or any other witness providing Green with an "alibi" for the shooting.

statement," there could have been no error associated with the notarized statement not being admitted into evidence, or Mr. Green not being called as a witness.

Under these circumstances, Green has not established that his trial counsel's failure to secure Mr. Green's attendance at trial, or to seek a continuance due to his alleged illness, was objectively unreasonable or that these actions by counsel prejudiced Green's defense. Accordingly, the state courts' rejection of this ineffective assistance of counsel claim, during the Rule 37 proceeding, was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record.

### d.    Patricia Louis Shay

Green appears to argue that his trial counsel was ineffective because he failed to call Shay to testify. *Doc. 2 at 6; Doc. 9 at 4*. However, Green has not submitted an affidavit from Shay, describing her anticipated trial testimony, or otherwise explained how calling her as a witness would have bolstered his defense.

In his Rule 37 proceeding, Green referred to Shay as an uncalled "alibi" witness, but did not describe her anticipated "alibi" testimony. *Rule 37 Tr. 75-76, 83; Doc. 2 at 79, 84-85*. Because of the utterly conclusory nature of these allegations, the state courts' rejection of this claim, during the Rule 37 proceeding, was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable

16

determination of the facts in light of the state court record.

### e.    Officer Kohler

Green alleges that Kohler was the first officer on the scene on the night of the shooting, and that his trial testimony was needed to challenge the victim's identification of Green as the shooter. According to Green, on the night of the shooting, the victim told Kohler that he was shot by someone named "J-Rock." This differed from the victim's July 23, 2008 statement to police and from his trial testimony, where he identified his assailant as Green, whom he knew as "Loco." Green argues that his trial attorney provided ineffective assistance of counsel by not calling Kohler as a witness and eliciting his testimony that the victim had identified two different people as the shooter. *Doc. 2 at 7; Doc. 9 at 6*.

At his Rule 37 hearing, Green offered testimony to support this ineffective assistance of counsel argument, and he identified Kohler in his Rule 37 appeal as one of the witnesses his trial counsel failed to subpoena. *Rule 37 R. at 76, 83, 86-87; Doc. 2 at 79*. Both the trial court and the Arkansas Supreme Court rejected this argument in denying Green Rule 37 relief.

In making this argument, Green seemingly overlooks the fact that *he admitted that he shot the victim, who was unarmed at the time,* and his admission was corroborated by his own eyewitnesses. *See Trial R. at 224, 246, 253-54.*

Green's argument that his trial counsel should have called Kohler as a witness is based entirely on his theory that there was a "second shooter." As previously discussed, the victim testified that, *after* Green shot him in front of the club, Green got in a white car, chased him to a second location, and repeatedly shot him again.[11] The victim was the only witness who testified about the second shooting. Green and his other eyewitnesses testified that Green stood in the door of the club and fired multiple shots at the victim, as he unsuccessfully attempted to get in his truck and then fled on foot. Green denied later chasing the victim in a car or shooting at him a second time. Finally, Green, Howard and Frye all testified that, after Green fired the shots from the door of the club, he went back inside.[12]

At the end of the bench trial, the judge reviewed the evidence and noted the victim's testimony that "he was shot [at the club] and then he ran around and he was shot there in the ditch again." *Id. at 263*. However, in finding Green guilty on all counts, the court expressly stated that it was "concentrating" on Green's undisputed conduct in picking up the gun during the club fight; following the victim outside; and then shooting at him repeatedly, *in front of the club*, as he tried to get inside his locked truck and then fled on foot. *Id. at 263-65.*

---

[11]It is undisputed that, when the victim arrived at the hospital, he had five separate gunshot wounds. *Trial R. at 127-28.*

[12]Officers were unable to locate any shell casings at the alleged scene of the second shooting. *Trial R. at 123-24.*

Similarly, in Green's direct appeal, the Arkansas Court of Appeals also based its decision to affirm his conviction, for attempted capital murder, battery, and being a felon in possession of a firearm, on the "compelling evidence" that Green "follow[ed] Worsham outside [the club] with the gun, after the fight was over," and then shot him, without mentioning *any evidence* supporting Green's alleged involvement in the "second shooting." *Green I*, *supra* at 6.

In Green's Rule 37 proceeding: (1) Green's trial counsel testified that, due to the lack of supporting forensic evidence, the trial judge "made it clear that he wasn't considering a second location" in finding Green guilty of all charges; and (2) the prosecutor testified that the trial court had "kind of dismissed there would have been any chasing into a ditch [at a second location]." *Rule 37 R. at 109, 115-16.* Thus, without considering the conflicting evidence regarding a "second" shooting, both the trial court and the Arkansas Court of Appeals made it clear that Green's actions, in shooting the victim *in front of the club*, were sufficient to support his convictions *on all three charges*.

Finally, while Kohler did not testify at trial, Green's counsel asked another police officer if the victim had ever identified his assailant as "someone named Jay Rock." The officer responded that he thought he had seen that name in the incident report but did not have it in his own notes. *Trial R. at 131.*

If Green's trial counsel had called Kohler to testify that the victim also identified a person named "J-Rock" as "the shooter," it only could have established that "J-Rock" was the "second shooter," *because Green himself admitted he was the "first shooter*," which was the *sole basis* for the trial court's decision that he was guilty of all three charges. Thus, Green has not established a reasonable probability that the outcome of his trial would have been different if Kohler had been called and questioned by Green's trial counsel. Accordingly, the state courts' rejection of this ineffective assistance of counsel claim in the Rule 37 proceeding was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record.

### f.   Dennis Barton

Green argues that his trial counsel was ineffective for failing to interview and subpoena Dennis Barton, the victim's uncle. *Doc. 2 at 2-3, 9, 11; Doc. 9 at 8-9, 11-12*. Green points to statements made by Barton in a police interview shortly after the shooting. In that interview, Barton said that, after Green shot the victim in front of the club, the victim ran away and Green "went back in" the club. Barton went on to say: "And so I got in my truck and I went down ... 20th Street looking for him [the victim]." *Rule 37 Tr. at 143, 150-51*.

As he did in the Rule 37 proceeding, Green now argues that, if Barton had been

called as a witness and testified consistent with the statements in his police interview, it would have helped Green's defense in two ways: (1) Barton's statements that Green "went back in the club," immediately after the shooting, would have contradicted the victim's testimony that Green got in a car, chased him to a second location and shot him several more times; and (2) Barton's statement that he – not Green – got in a vehicle and went looking for the victim would have proved that Detective Seigler "intentionally falsified" the affidavit that was used to obtain the warrant for Green's arrest.[13] *Doc. 2 at 80-81, 84-86; Doc. 9 at 8-9; Rule 37 R. at 17, 76-79, 87-93, 96-97.*

At the Rule 37 hearing, Green's counsel testified that he "talked about" calling Barton as a witness but, despite efforts to locate him, he "couldn't get him." *Rule 37 R. at 105-06*. Green's counsel also testified he did *not* believe, now or at the time of trial, that Barton would have been a "helpful" witness. Counsel noted that, even though Barton did say Green "went back in" the club, he also "clearly said [Green] was out and firing shots at the victim [in front of the club]." *Id.*

In Green's Rule 37 proceeding, the trial court and the Arkansas Supreme Court rejected his contention that his attorney was constitutionally ineffective for failing to

---

[13]According to Seigler's affidavit, *"Mr. Barton stated that 'Loco'* [Green] got into a white vehicle and followed" the victim, and *"Mr. Barton stated that 'Loco'* [Green] caught up with [the victim] and shot him several times." *Rule 37 R. at 130*. In his interview, Barton did *not* say he saw Green get in a vehicle, chase the victim, or shoot him "several [more] times." *Id. at 143, 150-51.*

call Barton as a witness.

The trial court's docket sheet shows that *the state* served a subpoena on Barton to appear as a witness at the October 11, 2010 trial,[14] but Barton failed to appear in response to that subpoena. Thus, even if Green's counsel had been able to locate Barton and serve him with a subpoena, it seems unlikely he would have responded any differently and appeared at trial.

More importantly, Green's trial counsel had good reason to believe that Barton would *not* be a helpful witness. As previously discussed, all of the witnesses, including Green, testified that Green fired shots at the victim as he attempted to get in his truck in front of the club, but *only the victim* testified that Green later used a car to chase him down and shoot him a second time. Thus, the decision by Green's trial counsel not to call Barton (whose only supporting testimony would have been "cumulative") because he might also offer *harmful testimony* about Green's role in the "second shooting," was a reasonable and prudent tactical decision. Finally, as previously discussed, the largely undisputed evidence of Green's actions in the "first shooting" was more than sufficient to support his conviction on all three charges, *without considering* the conflicting evidence regarding the "second shooting."

Regarding Detective Seigler's allegedly "falsified" affidavit, Green has failed

---

[14]*See State v. Green*, Pulaski Co. Cir. Ct. No. 60CR-08-4448, 11-23-10 docket entry (accessed electronically); *see also Doc. 2 at 71*.

to establish what could have been gained from his trial counsel challenging that affidavit, which was only used to obtain Green's arrest. Importantly, excluding all of the allegedly false statements in the affidavit about Green's involvement in the "second shooting," the *other facts* in the affidavit establish Green's role and involvement in the "first shooting," and were sufficient, standing alone, to support his arrest. The law is well-established that irregularities in an arrest do not void a subsequent conviction. *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *Hale v. Lockhart*, 903 F.2d 545, 550 (8th Cir. 1990).

Finally, Seigler's trial testimony related *only* to his interview with the victim, and to the victim's identification of Green from a photospread. *Trial R. at 132-38.* Neither Seigler, nor any other witness, mentioned the arrest affidavit or its contents. *Except for the victim*, there was no testimony about anyone witnessing Green chasing the victim in a vehicle or shooting him in a second location. This largely explains why the trial court made it clear that it was basing its verdict, on all three counts, on Green's actions in connection with the "first shooting."

Under these circumstances, Green has failed to establish that his trial counsel's failure to subpoena Barton, or to otherwise challenge Detective Seigler's allegedly "falsified" affidavit in support of the arrest warrant, was objectively unreasonable or prejudiced Green's defense. Accordingly, the state courts' rejection of this ineffective

assistance of counsel claim in the Rule 37 proceeding was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record.

### g.   Keith Farr and Kenneth Farr

Green argues that his trial counsel was ineffective for failing to interview and subpoena Keith Farr and Kenneth Farr ("the Farrs"), who allegedly would have given testimony to contradict the way the victim described his prior criminal history. *Doc. 2 at 6, 12; Doc. 9 at 4, 14*. Green has not submitted any affidavits from the Farrs describing how they would have testified at trial.

According to Green, at the time the victim gave his trial testimony, he had pending charges for domestic battery, multiple drug-related offenses, resisting arrest, and public intoxication. *Doc. 2 at 12*. Green has submitted a copy of a judgment of conviction, showing that, on December 16, 2010 – two months *after* testifying against Green – the victim pleaded guilty to three felony drug offenses and received three concurrent 160-month sentences. *Doc. 12*.

During Green's trial, the victim was questioned several times, on direct and cross examination, about his *prior* felony convictions from 1996, 1997 and 1999. *Trial R. at 88, 93-94, 108-09, 112*. In response to Green's counsel's questions, the victim denied "having any other trouble" and affirmed that, except for the above prior

convictions, he had "complied with the law." *Id. at 93-94.* At Green's sentencing, on November 15, 2010, his trial counsel attempted to present documentary evidence of the victim's still "pending drug charges," to which the prosecutor objected. *Id. at 286-88.* It is unclear from the record whether the trial court considered that evidence before imposing Green's sentences.

At his Rule 37 hearing, Green testified that the Farrs were "willing to testify that [the victim] told them he was going to receive leniencies from the prosecutor," on his pending felony charges, if he testified against Green. According to Green, this would have established that the victim had a "[personal] interest" in testifying against Green. *Rule 37 R. at 82*. Finally, Green testified that he gave his trial counsel the names and contact information for the Farrs, so they could be called as witnesses, but his attorney failed to secure their testimony. *Id.*

In contrast, Green's trial counsel testified that Green only told him that the victim "had picked up a charge." Because "charges" are not the same as "convictions," Green's counsel testified that he did not believe such evidence was admissible or an appropriate subject for cross examination. *Id. at 108.* He said he believed the trial evidence showed the victim to be the initial aggressor and, "if there was any benefit to be derived by what [the victim] did after that, it would show he was a mean-spirited person and [counsel] felt that [the other] witnesses [had already]

showed that." *Id.*

The trial court rejected Green's arguments regarding his attorney's failure to call the Farrs to testify. Although Green did *not* raise this ineffective assistance of counsel claim in his Rule 37 appeal to the Arkansas Supreme Court, the deferential standard of review contained in § 2254(d) still applies to Rule 37 claims that are adjudicated only by a state trial court, and are not raised later at the appellate level. *See Worthington*, 631 F.3d at 497-98.

At most, Green's conjecture about how the Farrs would have testified may have cast doubts on the victim's trial testimony that, apart from his three prior felony convictions, he had "complied with the laws." However, such conjecture falls far short of establishing that his trial counsel was constitutionally ineffective for failing to call the Farrs to testify about their secondhand knowledge of the victim's "pending charges." As discussed, the victim's credibility was impeached by the evidence of his admitted three prior felony convictions, for which he served time in the penitentiary.[15] It is highly unlikely that any testimony from the Farrs about the victim's "pending charges" would have swayed the trial judge's ultimate decision that Green was guilty of attempted capital murder, battery, and being a felon in possession of a firearm.

---

[15]*See Dansby v. Hobbs*, 766 F.3d 809, 835 (8th Cir. 2014) ("[H]ow much to impeach a witness is generally a matter of trial strategy left to the discretion of counsel."), *cert. denied*, 136 S. Ct. 297 (2015).

Under these circumstances, the alleged failure of Green's trial counsel to call the Farrs to testify about the victim's "pending charges" was not objectively unreasonable. In addition, Green has not shown a reasonable probability that, if his attorney had called the Farrs to testify, their testimony would have been admitted, or, if admitted, it would have affected the outcome of Green's trial. Accordingly, the state court's rejection of this ineffective assistance of counsel claim in the Rule 37 proceeding was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record.

### h.    Expert Witness on Bullet Trajectory

Green argues that his trial counsel was ineffective for failing to obtain an expert witness on bullet trajectory, who could have offered testimony to rebut the victim's contention that Green chased him to a second location and repeatedly shot him. Green correctly points out that no forensic evidence was found at the scene of the alleged "second shooting," such as shell casings or blood splatter. Thus, he contends that an expert witness was needed to show the trajectory of all shots fired at the scene of the alleged "second shooting," and the wounds allegedly received by the victim at that location. According to Green, such a witness would have shown his "actual innocence." *Doc. 2 at 7; Doc. 9 at 5.*

As already discussed, the undisputed testimony from Green and his other

eyewitnesses was that *he* fired multiple shots at the victim in front of the club, and at least one of those shots struck the victim. It was this evidence, *in connection with the "first shooting*," that the trial court relied on to find Green guilty of all three charges. Obviously, testimony from a bullet trajectory expert would have been utterly irrelevant to Green's *admitted role* in the "first shooting." Thus, Green has failed to establish a reasonable probability that, if counsel had secured an expert witness in bullet trajectory, the outcome of his criminal proceedings would have been different.

Accordingly, the trial court's and Arkansas Supreme Court's rejection of this claim in Green's Rule 37 proceeding was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record. *See Green II, supra* at 5.

### 2.   Counsel's Alleged Ineffectiveness Arising from His Failure to Prepare Green to Testify

Green argues that his counsel was ineffective for failing to prepare him to testify. He says his attorney did not consult with him about his testimony prior to him taking the stand, which meant he was required to testify "cold," with "no preparation at all and without knowing what questions counsel would be asking him." According to Green, this lack of preparation made him appear "less than credible" and, if counsel had spent more time with him prior to taking the stand, there is a reasonable probability that the result of his trial would have been different. *Doc. 2 at 8; Doc. 9*

28

*at 7-8.*

At his Rule 37 hearing, Green testified that, before trial, his attorney told him that he would *not* be testifying; only to later tell him he would need to testify, but with no preparation for the questions he would be asked. *Rule 37 R. at 88.* Green's counsel offered different testimony. According to him, he initially advised Green not to testify but, when the jury trial was waived, he told him "he's got to take the stand." *Id. at 109.* He also testified that he had known Green "for a number of years"; had represented him in other matters; and thought they "always had a good relationship." *Id. at 103-04.* He said he represented Green for two years in this case, "maintain[ed] contact throughout this process," and felt they had "ample time to prepare." *Id. at 104, 112.* He said he and Green "spent a lot of time" together, and he "appreciated [Green's] willingness to help." *Id. at 112.*

Counsel also testified that, in addition to meeting with Green and preparing him to testify, he interviewed witnesses, reviewed criminal histories provided by the prosecutor, reviewed medical records, filed pretrial motions, hired a private investigator, went to the crime scene on two or three occasions, went to the crime scene with Green, subpoenaed witnesses, and "chased [one witness] all over Stuttgart to get her served." *Id. at 103-04, 113.* Counsel stated: "I thought we did everything we could and, within the confines of the law, we asserted every defense and oddly

enough, the testimony I thought went fairly well for us when it came to the defense." *Id. at 112*. Counsel said he was "prepared for trial" and "if that had not been the case, [he] would have explained it to [the Rule 37 court]." *Id.*

Finally, Green's trial counsel testified that, at the outset, he was "concerned" about the "three-strike rule," due to Green's prior violent felonies, and knew that Green would have to "do every day" of any sentence received. *Id. at 113*. Counsel said they rejected a fifteen-year offer extended by the state before trial. *Id.* Before the sentencing hearing, counsel "wrote a very strong letter to the Court asking for leniency." *Id. at 114*.

When imposing sentence, the trial court stated that this was a "difficult case, presenting two different persons, so to speak." *Trial. R. at 326*. The court contrasted Green's testimony about his charitable work and spending time with his family, with the undisputed evidence that, after getting the gun away from the victim, Green followed the victim outside the club and shot him. *Id.* While noting Green's "valid concern" that the victim might have been going to his truck to get another gun, the court found it did not make Green's decision to shoot an unarmed man "self defense." Although the presumptive sentence was twenty-six years, the trial court said he was "going to deviate downward," sentencing Green to only ten years in the ADC. *Id. at 327-29*.

At the end of the Rule 37 hearing, the trial court noted that Green's counsel "did [him] a good job," and that Green's ten-year sentence was "five less than what the [plea] offer was to not go to trial." *Rule 37 R. at 115*. It then rejected Green's argument that his trial counsel was constitutionally ineffective for failing to adequately prepare him to testify.[16]

Based on the record, Green has not established that his counsel's alleged failure to prepare him to testify was objectively unreasonable, or that it prejudiced his defense. Accordingly, the state court's rejection of this ineffective-assistance claim in the Rule 37 proceeding was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record.

### 3. Counsel's Ineffectiveness Arising From his Alleged Failure to Investigate All Available Defenses

Finally, Green argues that his counsel was ineffective for failing to investigate a "more favorable" defense, such as the "castle doctrine," "use of deadly force," or "duress." *Doc. 2 at 9; Doc. 9 at 9*. Green raised a similar argument in his Rule 37 petition and in his Rule 37 appeal, where he generally contended that counsel failed to conduct an adequate pretrial investigation and prepare a defense. *Rule 37 R. at 84-*

---

[16]Green did *not* raise this ineffective assistance of counsel argument in his appeal to the Arkansas Supreme Court.

*86; Docs 2 & 6-1.* The state courts rejected that argument.

At the Rule 37 hearing, Green's counsel testified that he discussed possible defenses with Green prior to trial, and reviewed the relevant statutes. *Rule 37 R. at 106.* He stated that he believed a "castle doctrine" argument could only have been made if the shooting had occurred inside the club. *Id. at 106-08.* He said that: (1) the "choice of evils" argument was a "legitimate defense" for Green being a felon in possession of a weapon; and (2) he "thought there was at least a good faith argument to be made about use of deadly physical force in defense of a person." *Id.*

During the trial, Green's attorney, in fact, presented evidence and arguments in support of Green acting in "self-defense," as well as a "choice of evils" defense on the felon-in-possession charge. *Trial R. at 181-82, 256-57.* After the trial court found Green guilty on all three charges, Green's counsel renewed those arguments in the direct appeal to the Arkansas Court of Appeals, which later affirmed the trial court's decision. *Green I, supra* at 1.

Given these undisputed facts, Green has not established that his counsel's choice of defense strategies was objectively unreasonable, or that it prejudiced his defense. Accordingly, the state courts' rejection of this ineffective-assistance claim in his Rule 37 proceeding was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of

the state court record.

## B.   GREEN'S SPEEDY TRIAL CLAIM

Green argues that his Sixth Amendment right to a speedy trial was violated and that his counsel was ineffective for failing to protect that right. He alleges that, at a hearing on September 25, 2009, the trial court said "it was the last day to take petitioner to trial." According to Green, his counsel said he was not prepared for trial and allowed the prosecutor to ask for a continuance, without objecting or asking for dismissal of all charges due to the speedy trial violation. *Doc. 2 at 10; Doc. 9 at 10.*

Green raised similar claims in his Rule 37 petition and in his Rule 37 appeal. Those claims were rejected by the trial court and the Arkansas Supreme Court. *Rule 37 R. at 18-19, 24-25, 44; Doc. 6-1 at 9.*

According to the docket sheet in Green's criminal case, there were no court hearings of any kind in September 2009. *Trial R. at 3-4.* At the Rule 37 hearing, Green's counsel said that he had "no recollection" of the trial judge ever saying it was "the last day for trial." *Rule 37 R. at 102-03.* In addition, even if the twelve-month period for bringing Green to trial under state law began running upon his arrest in September 2008, the docket sheet shows that the speedy trial period was *tolled continuously* from January 13, 2009 through the date of his bench trial, October 11, 2010, due to continuances at the request of defense counsel, on joint motion of the

parties, or on a "pass" by the trial court. *Trial R. at 3-5, 16*; *see generally* Ark. R. Crim. P. 28.1, 28.2, 28.3.

Because no speedy trial violation occurred, counsel cannot be deemed to be ineffective, under the *Strickland* standard, for failing to pursue a *meritless claim*. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Accordingly, the state courts' rejection of Green's speedy trial claims in the Rule 37 proceeding was not contrary to, or an unreasonable application of any United States Supreme Court decision, nor was it based on an unreasonable determination of the facts in light of the state court record.

## C.   GREEN'S CLAIM THAT PROSECUTORIAL MISCONDUCT DEPRIVED HIM OF A FAIR TRIAL[17]

Finally, Green alleges that he was denied a fair trial based on the following prosecutorial misconduct: (1) Detective Seigler falsified statements in an affidavit to obtain Green's arrest, which "affected the trier of fact and influenced the way [Green] was charged"; (2) the prosecutor being allowed to "belatedly" amend the charging information to add a third count; (3) the prosecutor failing to inform the court of a "deal for leniency" in exchange for the victim's testimony; and (4) the prosecutor knowingly allowing the victim to give perjured testimony. *Doc. 2 at 10-12; Doc. 9 at*

---

[17]As a general rule, prosecutorial misconduct amounts to a constitutional violation only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

11-15.[18] While all of these prosecutorial misconduct claims were required to be asserted in Green's direct appeal of his conviction, none of them were raised.

Instead, Green asserted those claims, *for the first time*, in his Rule 37 proceeding. *Rule 37 R. at 19-20, 89-90, 95-98; Doc. 2 at 81, 84, 86-87*. Because such claims are not cognizable in a Rule 37 proceeding, neither the trial court nor the Arkansas Supreme Court mentioned Green's prosecutorial misconduct claims in denying him Rule 37 relief. *See Camacho v. State*, 2011 Ark. 235, at 2.

Accordingly, Green has procedurally defaulted the prosecutorial misconduct claims that he has asserted in this habeas action. *See Murphy v. King*, 652 F.3d 845, 848-50 (8th Cir. 2011) (before seeking federal habeas relief, petitioner must "fairly present" his claim to the state courts; federal habeas review of procedurally defaulted claims is "barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice") (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

As "cause" for failing to properly raise these prosecutorial misconduct claims

---

[18]Green also alleges that his attorney was ineffective for: (1) failing to challenge the detective's "false and misleading" arrest affidavit; and (2) generally failing to "bring up the issue of prosecutorial misconduct." *Doc. 2 at 10-11; Doc. 9 at 11, 15.* The Court has previously addressed and rejected similar ineffective assistance of counsel arguments in Sections II(A)(1)(f) and (g).

in state court, at the appropriate time, Green blames his trial attorney. Accordingly, this Court must now decide whether Green's trial counsel was constitutionally ineffective, under the *Strickland* standard, for failing to raise these prosecutorial misconduct claims during Green's trial and on direct appeal of Green's convictions to the Arkansas Court of Appeals.

## 1.    Allegedly False Statements in Arrest Affidavit

According to Detective Seigler's affidavit, Dennis Barton stated that he witnessed Green get in a white vehicle and chase the victim to a second location, where Green shot the victim several more times. Green argues that the statements in the affidavit that are attributed to Barton are "falsified" because they differ from the statements contained in Barton's police interview. *Doc. 2 at 10-11; see Rule 37 R. at 130, 143, 150-51.*

In his Rule 37 proceeding, Green argued that counsel was ineffective for failing to elicit from Seigler "meaningful adversarial testimony" and failing to "attack [Seigler's] false affidavit and [his] tampering with physical evidence." *Rule 37 R. at 89-90; Doc. 2 at 81, 84, 86-87.*

As discussed in Section II(A)(1)(f), Green has failed to establish what could have been gained from his trial counsel challenging the allegedly false statements in Seigler's affidavit about the "second shooting." This affidavit was only used to obtain

Green's arrest, and it contained more than enough facts about Green's role in the "first shooting" to support his arrest on all three charges. Such alleged "irregularities" in an arrest do not void a subsequent conviction. *Gerstein*, 420 U.S. at 119. In addition, the allegedly "false" statements in Seigler's affidavit were never mentioned at trial, much less relied on by the trial court in finding Green guilty of any of the charges. Seigler's trial testimony related only to his interview with the victim, and to the victim's identification of Green from a photospread, and no witness mentioned the content of Seigler's affidavit.

The victim was the *only witness* who testified about Green chasing him in a vehicle and shooting him at a second location. His testimony was based on his purported personal knowledge of what happened to him, not on what Seigler stated in the arrest affidavit or what Barton said in an interview with police. Green and his other eyewitnesses provided enough substantial testimony to rebut the victim's testimony about the alleged "second shooting," and caused the trial court to conclude that Green's role in the "first shooting," *standing alone*, was sufficient to find him guilty of all three charges. The Arkansas Court of Appeals affirmed that finding and upheld Green's convictions.

Under these circumstances, Green has not established that counsel's failure to challenge Seigler's affidavit at trial and on direct appeal was objectively unreasonable,

nor has he established a reasonable probability that, but for counsel's omission, the outcome of his criminal proceedings would have been different. Accordingly, the state courts' rejection of this ineffective-assistance claim in the Rule 37 proceeding was not contrary to, or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the state court record. Because counsel was not constitutionally ineffective in failing to challenge Seigler's affidavit in support of Green's arrest, counsel's conduct cannot constitute cause to excuse Green's default of the prosecutorial misconduct claim.

### 2.   <u>Belated Amendment of Charges</u>

According to the record, on October 6, 2009, the state filed an Amended Felony Information, adding a battery count. *Trial R. at 31-33*. At that time, trial was set for the next day. *Id. at 4*. On October 7, the trial court *granted* Green's motion to continue, setting a new trial date of November 5, 2009. *Id.* On October 9, Green's counsel asked for another continuance because he was trying to locate and interview witnesses. *Id. at 57*. Several other continuances were later granted, with Green's trial finally being held on October 11, 2010. *Id. at 4-5, 61, 65, 69.*

Green has failed to provide *any* law to support his claim that the charging information was improperly amended. Under Arkansas law, the state is entitled to amend an information at any time prior to the case being submitted to the jury, as long

as there is "adequate notice" and the amendment does not "mislead or impede the defendant in making a defense." *Carter v. State*, 460 S.W.3d 781, 788 (Ark. 2015). Here, the amended information, *filed more than one year before Green's trial*, provided adequate notice for him to prepare his defense on all three of the charged offenses.

Under these circumstances, Green has not established that his attorney's failure to challenge the prosecutor's amendment of the Felony Information, to add a battery count, was objectively unreasonable, nor has Green established a reasonable probability that, but for counsel's alleged omission, the outcome of his criminal proceedings would have been different. Because this alleged oversight by Green's trial counsel was not constitutionally ineffective under *Strickland*, it cannot constitute cause to excuse Green's default of the related prosecutorial misconduct claim.

### 3. Prosecutor's Alleged Failure to Inform Trial Court of "Deal for Leniency"

To support his claim that the prosecutor failed to inform the court that the victim had been promised a "deal for leniency" in exchange for his testimony, Green points to: (1) his unsupported allegation that two uncalled witnesses, the Farrs, would have testified that the victim told them he had received a "deal for leniency" in exchange for his testimony against Green; (2) Green's unsupported allegation that, at the time of trial, the victim had pending charges for domestic battery, multiple drug-

related offenses, resisting arrest, and public intoxication; and (3) a judgment of conviction showing that, two months *after* testifying against Green, the victim pleaded guilty to three felony drug offenses. *Doc. 2 at 12; Doc. 9 at 14; Doc. 12*.

Importantly, Green does not allege that his attorney was unaware of any "deal for leniency," only that such arrangement was "hidden from the court." As discussed in Section II(A)(1)(g), Green testified at the Rule 37 hearing that he told counsel, before trial, that the Farrs were "willing to testify that [the victim] told them he was going to receive leniencies from the prosecutor on charges he had pending to testify against the petitioner." *Rule 37 R. at 82*. Green said he provided his counsel with the Farrs' names, addresses and phone numbers. *Id.* Green also testified that he told counsel to ask the victim, on cross examination, if he had been offered "any leniencies." *Id.* In contrast, Green's counsel testified that Green only told him that the victim had "picked up a charge," something he believed was not admissible at trial or appropriate to use in cross-examination. *Id. at 108*. At Green's sentencing, his trial counsel did attempt to present documentary evidence of the victim's "pending drug charges," and the prosecutor objected. *Trial R. at 286-87*. It is unclear whether the trial court considered that evidence before Green was sentenced.

Green's speculative and conclusory allegations about the alleged "deal for leniency" fall far short of the kind of evidence required to establish that the

prosecuting attorney "promised" the victim a "deal for leniency" in exchange for his testimony against Green. More importantly, Green's allegations do *not* establish a reasonable probability that, if the alleged "deal for leniency" had been fully disclosed to the trial court, it would have affected the outcome of the trial. After all, *Green admitted* that he shot an unarmed man, as he tried to get inside his locked truck and then fled on foot, which was the *identical testimony* given by the victim.

Thus, Green has not established that this alleged error by his trial counsel was objectively unreasonable, nor has Green established a reasonable probability that, but for this alleged error by his attorney, the outcome of Green's criminal proceeding would have been different. Because Green's trial counsel's alleged actions and omissions were not constitutionally ineffective under *Strickland*, they cannot constitute cause to excuse Green's default of this prosecutorial misconduct claim.

### 4.   <u>Knowing Use of Perjured Testimony</u>[19]

Finally, Green argues that the prosecutor used the following testimony from the victim, all of which Green claims the prosecutor knew was false: (1) Green got in a car, chased the victim to a second location, and shot him repeatedly; (2) he (the

---

[19]A conviction must be set aside if it is obtained by the prosecutor's knowing use of perjured testimony. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To demonstrate a due process violation under the *Napue* standard, a defendant must establish that: (1) the prosecution used perjured testimony; (2) the prosecution actually knew or should have known of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the verdict. *United States v. West*, 612 F.3d 993, 996 (8th Cir. 2010).

victim) did not use cocaine the day of the shooting; and (3) except for certain prior felony convictions that the victim admitted to during his testimony, he had "complied with the law" and was not "having any trouble." Green's purported basis for believing the prosecutor *knew* these statements were *false* is the supposition that the prosecutor had access to the victim's criminal and medical records, and other "forensic evidence."

Green has not established that his attorney was ineffective for failing to argue, at trial and on direct appeal, that the prosecutor knowingly used perjured testimony from the victim. There can be no due process violation where a witness simply told different stories and defense counsel knew as much as the prosecution. *United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007).

On cross-examination, Green's attorney explored the weaknesses in the victim's testimony about being chased down by Green and shot a second time, and presented testimony to controvert his story from Green, Howard and Frye. Although the victim's account of a "second shooting" was uncorroborated and not supported by any forensic evidence, that does not mean it was perjured testimony which was knowingly used by the prosecutor. Similarly, Green's counsel asked the victim about his use of alcohol and drugs on the day of the shooting, and the victim admitted drinking and smoking marijuana, but denied using cocaine. *Trial R. at 90, 103-05, 113-14*. Counsel asked the

victim about his prior convictions, but believed it improper to question him about other "pending charges," since he was entitled to a presumption of innocence. In light of these facts, Green's trial counsel was in no legal or ethical position to rely on sheer speculation to support the extremely serious charge that the prosecutor was suborning perjury.

More importantly, in light of the substantial evidence of Green's guilt – aside from the victim's allegedly false testimony – he has not established a reasonable probability that, if counsel had raised a prosecutorial misconduct claim at trial, and on appeal, the outcome of his criminal proceedings would have been different. Because counsel was not constitutionally ineffective under *Strickland* in failing to pursue this matter, counsel's conduct cannot constitute cause to excuse Green's default of the related prosecutorial misconduct claim.

### III. Conclusion

IT IS THEREFORE RECOMMENDED that:

(1)     All of Green's ineffective assistance of counsel claims be DISMISSED, WITH PREJUDICE, because they all lack any merit;

(2)     Green's speedy trial claim be DISMISSED, WITH PREJUDICE, because it lacks merit;

(3)     All of Green's prosecutorial misconduct claims be DISMISSED, WITH

PREJUDICE, because they are procedurally barred;

(4)     This 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, *Doc. 2*, be DENIED and this case be DISMISSED, WITH PREJUDICE; and

(5)     A Certificate of Appealability be DENIED.[20]

DATED THIS 4th DAY OF January, 2016.

_____

UNITED STATES MAGISTRATE JUDGE

---

[20]*See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.